## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                           Case No. 05-Cr-154

CHRISTOPHER JACKSON,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE J.P. STADTMUELLER

## NATURE OF CASE

On June 21, 2005, the defendant, Christopher Jackson, was charged in a four-count indictment returned by a federal grand jury in this district. Currently pending is the defendant's motion to suppress as evidence all statements, oral or written, allegedly made by the defendant to law enforcement officers or any other governmental officials or their agents. (Docket #51). This motion will be addressed herein.

## MOTION TO SUPPRESS STATEMENTS

On June 22, 2006, the court conducted an evidentiary hearing on the defendant's motion to suppress statements. (Docket #51). The following individuals testified on behalf of the government: Milwaukee Police Department Officers Nicole Noet and Malcom McNeil. The defendant, Christopher Jackson, testified on his own behalf. Based on the evidence presented at the hearing, the court makes the following findings of fact.

**Findings of Fact**

On May 18, 2005, at approximately 6:35 p.m., Milwaukee Police Department (MPD) Officer Nicole Noet went to a location at North 31st Street and West Courtland Avenue in Milwaukee, Wisconsin, as part of an undercover narcotics investigation. A detective with the MPD had provided her with information that a black male, known as "Little C" was selling narcotics. He gave her the telephone number for "Little C" and asked her to call him about a drug purchase. Officer Noet, who was operating in an undercover capacity, called "Little C" about the purchase of "a couple." She told "Little C" that her name was "Red" and, in response to a question, told him that she was a friend of "Wanda's." "Little C" agreed to conduct the transaction.

Officer Noet went to the location at North 31st Street and West Courtland Avenue at approximately 6:35 p.m. A black four-door vehicle drove up and she entered the front passenger side of the vehicle. The only individual in the vehicle was the driver who subsequently was identified as the defendant. She and the defendant discussed her purchase of narcotics. The defendant asked her where he knew her from and she replied that she was a friend of "Wanda's from Atkinson." Office Noet purchased two "rocks" of cocaine for $20.00. The driver of the vehicle was the same individual that Officer Noet had spoken to on the telephone and who had agreed to sell her a "couple." After completion of the hand-to-hand transaction, Officer Noet exited the vehicle and gave the predetermined "take down" signal.

The defendant was arrested by other officers near 2619 W. Glendale in Milwaukee, Wisconsin. Officer Noet, who was in an undercover vehicle, drove past the defendant after his arrest and confirmed that the individual under arrest was the person who sold her the drugs. Officer Noet did not see the actual arrest of the defendant.

MPD Officer Malcom McNeil and his partner, Officer Christopher Chu, were working on the May 18, 2005, when they received a radio transmission from the "over watch vehicle" that the drug transaction had occurred. They were also provided a description of the vehicle and the person involved, as well as the location of the drug transaction. Officers McNeil and Chu observed the described vehicle and stopped the car at approximately 6:42 p.m. at 2619 W. Glendale. Neither officer had observed the actual drug transaction.

After the defendant's vehicle was stopped, the officers walked up to the vehicle. Officer McNeil, who went to the driver's side of the vehicle, asked the defendant to get out of his car. He also asked him his name, his date of birth and his address. Officer McNeill obtained this background information before the defendant was read his rights. The defendant was placed under arrest and handcuffed.

Officer McNeil did not recall any statements made by the defendant while he was being handcuffed, except that the defendant talked about the "situation." The officer did not recall how long the defendant was talking, but stated it may have been from the time he was handcuffed until he was put in the squad car. According to Officer McNeil, the defendant appeared to be aware of why he was stopped.

The defendant was searched after he exited the vehicle. The defendant had the "buy money" on his person, as well as an additional $190.00. The defendant was placed in the back seat of the squad car in handcuffs. Officer Chu then went back to the defendant's car and conducted a search of the vehicle.

- 3 -

After the defendant was placed in the back seat of the squad car, Officer McNeil testified that he read the defendant his Miranda[1] rights from a Wisconsin Department of Justice Advice of Rights card which he carried with him. He asked the defendant if he could read and write, whether he had any mental problems that would hinder his ability to have a conversation with the officer and whether he had any other medical problems. According to Officer McNeil, the defendant stated that he understood his rights and wanted to make a statement.

Officer McNeil stated that he took the defendant's statement in the squad car. The interview lasted about one half hour. Normally, statements from persons who have been arrested are taken at the MPD Vice Control Division. Office McNeil decided to take the defendant's statement in the squad car. There was a plexiglass partition between the front and back seats of the squad car which Officer McNeil opened when he interviewed the defendant. The back seat of the vehicle was locked.

The defendant answered the questions posed by Officer McNeil. Office McNeill testified that the defendant appeared to understand the questions and his answers were responsive. Officer McNeill also testified that he wrote down the defendant's statement. He placed the statement on a clip board, closed the partition between the first and back seats and exited the front seat of the squad car. He opened the car's back door, read the statement in its entirety to the defendant and held it so that the defendant could read along with him.

Officer McNeil testified that he then asked the defendant if he was willing to sign the statement. The defendant was handcuffed with his hands behind his back so Officer McNeil shifted the handcuffs so that the defendant was handcuffed with his hands in front. Officer

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

- 4 -

McNeil stated that the defendant signed the statement after the first paragraph on the second page. This paragraph states that the defendant was read his rights and that he was willing to make a statement to the police. See Exhibit 1 at 2. The defendant also signed his name at the end of the statement. Id, at 3. After the defendant signed the statement, Officer McNeil testified that he returned to the front seat of the squad car. The defendant's statement does not contain the time the interview concluded, although the usual practice is to include such information.

According to Officer McNeil, he then opened the partition and talked to the defendant about cooperation. Officer McNeil testified that no promises were made to the defendant about benefits to him from any information he might provide. He denied telling the defendant that the case would go away if the defendant identified his source of the drugs.

The testimony of the defendant differed in several significant respects from that of Officer McNeil. The defendant testified that he was stopped at 27th Street and Glendale Avenue by Milwaukee police officers. He complied when the officer told him to get out of his car. According to the defendant, he was searched, but he did not make any excited statements and was not told that he was under arrest. The defendant testified that he was not asked any questions until he was placed in the squad car.

The defendant testified that he initially was asked in the squad car if he knew why he was being arrested, where he obtained the drugs, and if he would make a call to set up a controlled buy to help himself out. The defendant said the officer told him the he possibly would not be charged, depending on the information he provided and his cooperation. He further testified that he was not advised of his Miranda rights until after the first few questions were asked.

The defendant said that he was asked if he understood his rights, but the officer never asked him if he was willing to waive his rights. The defendant said he did not waive his constitutional rights. According to the defendant, he did not fully understand his <u>Miranda</u> rights at the time. Although he previously was convicted of possession with intent to deliver drugs, the defendant had not been given his <u>Miranda</u> rights. The defendant further testified that he did not know his <u>Miranda</u> rights until May 18, 2005. The defendant thought that by cooperating he possibly would not be charged. He testified that he felt he was being promised that he would not be brought up on charges if he cooperated.

According to the defendant, he spoke with the officer in the squad car for two hours before Officer McNeil transported him to the Milwaukee County Jail. The defendant testified that Officer McNeil also questioned him in an interrogation room at the jail. During the interview, the defendant said that another officer kept coming in and out of the interview room. The defendant testified that he was never shown any writing, nor did he sign the statement in the squad car. Rather, he testified that he signed the statement in the interrogation room. He said he was not shown the written statement and the officer did not read the statement to him. According to the defendant, he merely was handed the statement and was told to sign it. The defendant did not ask the officer to read the statement.

The defendant further testified that he felt pressured to talk to the officer, that he was confused in the squad car and paranoid and that he was doing what he had to do to get out of the situation he was in. The defendant told Officer McNeil the name and phone number of the source of the drugs.

## Analysis

In his motion to suppress, the defendant asserts that any statements he made to law enforcement officers must be suppressed because immediately upon his arrest he had invoked his right to counsel. The defendant also maintained that he had been coerced into providing the statement and he was incapable of understanding the rights purportedly given to him. He asserts that the statements were taken in violation of the rights guaranteed under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The defendant also seeks exclusion from use as evidence all derivative evidence.

The Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel require police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). In Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), the United States Supreme Court held that a suspect who has "expressed a desire to deal with police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police."

In this case, there is no dispute that the defendant was under arrest and in custody at the time he was questioned by law enforcement officers. Thus, the issues before the court are whether the defendant invoked his right to counsel, whether he was advised of his Miranda rights in a timely fashion and, if so, did he knowingly and voluntarily waive his rights.

At the outset, the court notes that although the defendant asserts in his motion that "when he was arrested he immediately invoked his right to counsel and refused to make any statement," no evidence was presented at the hearing that the defendant invoked his right to counsel immediately upon his arrest or at any time during his interrogation. (Defendant's

- 7 -

Motion to Suppress at 2). Therefore, the court will recommend that the portion of the defendant's motion to suppress his statements because he invoked his right to counsel be denied.

With respect to <u>Miranda</u> rights, the parties agree that the defendant was advised of his rights. However, the timing of the advice of rights and whether the defendant waived his rights are issues to be resolved.

Officer McNeil testified that prior to reading the defendant his <u>Miranda</u> rights, he asked the defendant some background information – his name, address and date of birth. Contrary to the defendant's testimony, Officer McNeil denied that he asked the defendant questions about cooperation and where he received the drugs before he advised the defendant of his rights. Officer McNeil said that after obtaining background information and placing the defendant in the squad car, he read the defendant his <u>Miranda</u> rights from a Wisconsin Department of Justice Advice of Rights card. He testified that he asked the defendant if he understood his rights and that the defendant stated that he did and that he wanted to make a statement.

The defendant testified that he was asked a few questions before he was advised of his rights, including if he knew why he was arrested, where he received the drugs, and would he make a controlled buy and cooperate with the officers. The defendant was in the squad car at the time. He also maintains that he did not understand his rights.

Neither Officer McNeil nor the defendant were evasive in answering the questions posed. However, on balance, the court finds the testimony of Office McNeil more credible. Office McNeil acknowledged that he asked certain background questions of the defendant

before giving Miranda rights. He also stated that he interviewed the defendant in the squad car, even though the general practice is to interview defendants at the police department.

The defendant testified that he was kept in the squad car for two hours. However, he testified that he was interviewed by Officer McNeil after he was transported to the Milwaukee County Jail. He also testified that despite his conviction for possession with intent to deliver drugs, he did not know his Miranda rights before May 18, 2005. Based on its assessment of the evidence, the court concludes that the defendant's testimony that he was told he possibly would not be charged if he cooperated and that he was questioned about the source of the drugs before being advised of his rights is not credible. The court also concludes that the defendant was interviewed and signed the written statement in the squad car after his arrest, not, as he testified, over two hours later after being interviewed in the Milwaukee County Jail.

With respect to Officer McNeil's initial questions to the defendant, questions such as "what is your name?" and "where do you live?" will not usually constitute interrogation within the meaning of Miranda because it cannot be said that police, when asking questions, should know that the questions are probably likely to evoke an incriminating response from a suspect. United States v. Edwards, 885 F.2d 377, 385 (7th Cir. 1989) (citing Rhode Island v. Innis, 446 U.S. 291, 301 [1980]). In so holding, the court noted that, in non-arrest situations, police routinely ask people for their names and addresses where it is clear Miranda warnings are not required, although such inquiries might, in fact, confirm a police officer's suspicions sufficiently to give rise to probable cause to arrest. Edwards, 885 F.2d at 385. Moreover, in an arrest situation, during booking, a defendant eventually will be asked identification questions and such inquiries are lawful, even absent the Miranda warnings. Id. (citing W. LaFave & J. Israel, 1 Criminal Procedure § 6.7[b], at 504 [1984] [omitting footnote]).

- 9 -

Accordingly, Officer McNeil did not violate the defendant's Miranda rights when he asked him his name, address and date of birth before reading the defendant his constitutional rights. Therefore, the court concludes that the defendant properly was advised of his rights prior to the commencement of the interview.

The court also must determine whether the defendant knowingly and voluntarily consented to waive his Miranda rights. It is well-established that a statement is not "compelled" within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his constitutional privilege. Miranda, 384 U.S. at 444. "The inquiry whether a waiver is coerced 'has two distinct dimensions.'" Colorado v. Spring, 479 U.S. 564 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 [1986]). As the Court explained in Moran:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

475 U.S. at 421 (internal citations omitted).

To determine whether a defendant voluntarily consented to waive his rights, the court must inquire whether, under the totality of the circumstances, law enforcement officers have overborne the will of the accused. Haynes v. State of Wash., 373 U.S. 503, 513-14 (1963); Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). The court in Schneckloth detailed the

- 10 -

factors to be considered when evaluating whether a defendant's "will was overborne" in the giving of statements:

> [T]he Court has assessed the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account include the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

412 U.S. at 226 (internal citations omitted).

The defendant suggests that he was coerced into providing a statement and states that he did not waive his rights. He also asserts that he did not understand his rights. The defendant testified that he felt pressured to talk to Officer McNeil, but that he did so to get out of the situation he was in. Officer McNeil testified that after the defendant was read his rights, he said he wanted to make a statement. The court finds Officer McNeil's testimony on this issue credible.

It is undisputed that the officers did not threaten the defendant to obtain his consent. Officer McNeil testified that the defendant was cooperative and answered the questions. The defendant may have felt pressure to talk to the officers to help himself especially given the fact that he just had been arrested on a hand-to-hand drug buy with an undercover police officer. However, there is no evidence of coercive police conduct. There is no indication that he invoked his right to remain silent or asked to stop the questioning. Moreover, there is no evidence or allegation of "coercion of a confession by physical violence or other deliberate means calculated to break [the defendant's] will." Colorado v. Spring, 479 U.S. at 573-74 (quoting Oregon v. Elstad, 470 U. S. 298, 312 [1985]).

- 11 -

Even if a defendant is advised that he was in serious trouble or facing significant charges, such information would not necessarily be sufficient for a court to conclude that the defendant's waiver of his rights was coerced. See, e.g., United States v. Ramirez, 112 F.3d 849, 853 (7th Cir. 1997) (telling a defendant "that cooperation with the police can result in a reduced sentence or other concession is not a promise and is not calculated to prevent the suspect from rationally considering whether or not to speak.").

In this case, the credible evidence establishes that the defendant waived his rights and agreed to make a statement. There is no evidence of coercion by the detectives to induce the defendant to waive his rights. Absent evidence that the defendant's will was overborne and his capacity for self-determination critically impaired because of coercive police conduct, the court concludes that the defendant's decision to waive his Fifth Amendment privilege was voluntary. See Schneckloth, 412 U.S. at 226.

Furthermore, the court concludes that the defendant's waiver of his Fifth Amendment rights was knowingly and intelligently made. There is no indication that the defendant was unable to understand his constitutional rights or the questions posed to him. The defendant calmly answered most questions. Based on the testimony presented, the court concludes that the defendant's waiver of his rights was made knowingly and intelligently within the meaning of Miranda.

In sum, the court finds that the defendant was advised of, and knowingly and voluntarily waived, his Miranda rights. There is no evidence that the defendant was coerced or threatened in any way into waiving his rights. Therefore, the court will recommend that the defendant's motion to suppress statements be denied. (Docket #51).

## **CONCLUSION**

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Christopher Jackson's motion to suppress statements. (Docket #51).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 17th day of July, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

O:\CRIM\Jackson suppress statements rec.wpd - 13 -

Case 2:05-cr-00154-JPS   Filed 07/17/06   Page 13 of 13   Document 75